UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
MARTIN ROBINSON,                            :
                                            :
                Plaintiff,                  :          CASE NO. 1:11-CV-01609
                                            :
vs.                                         :          OPINION & ORDER
                                            :          [Resolving Doc. Nos. 29, 30]
LT. JEROME BARROW, *et al.*,                :
                                            :
                Defendants.                 :
                                            :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Contrasting with typical excess force cases, this case arose after an Ohio corrections officer was beaten and arrested by Cleveland police officers while the Ohio corrections officer guarded against escapes by state prisoners.  In this case alleging excessive force, false imprisonment, and municipal liability against Cleveland Police Officers and the City of Cleveland, the Defendants move for summary judgment.  [Doc. 29, 30.]  Plaintiff Martin Robinson opposes the Defendants' motions.  [Doc. 43, 44.]  The motions are ridiculous.  With their motions, the Defendants say they should be able to come onto state-controlled property at 1:00 a.m., and were permitted to beat a state corrections officer when that officer told the Defendants to stop approaching an opening in the state prison fence.  Because there are genuine disputes of material fact, the Court **DENIES** the motions for summary judgment.

**I.  Background**

Case No. 1:11-CV-01609
Gwin, J.

On July 10, 2009, Plaintiff Martin Robinson was posted as a corrections officer at the perimeter fence of the Northeast Pre-Release Center (NEPRC), an Ohio women's prison facility. Robinson had been assigned to guard a breach in the fence that resulted after a car ran into the fence. Ohio corrections officer Jennifer Jones was operating her state-issued van to Robinson's post. Both Robinson and Jones were in Ohio Department of Corrections uniforms, both carried a firearm, both displayed Department of Corrections identification

Around 1:00 a.m., Robinson and Jones observed two unmarked cars drive up the street toward them. According to Robinson, the lead car stopped and Defendants Anthony Spencer and Jerome Barrow, dressed in black plain-clothes, jumped out and shouted, "What the fuck are you doing out here?". [Doc. 44-6.] Neither Spencer nor Barrow were in uniform. Robinson and Jones, unaware that the Defendants were Cleveland police officers, yelled back that Spencer and Barrow were on state property. Robinson pointed to his I.D. badge to indicate that he was a corrections officer. As Spencer and Barrow advanced on him, Robinson stepped backward, placed his hand on his gun, and ordered Spencer and Barrow to back away. At some point, Defendant Barrow drew his firearm and pointed it at Plaintiff Robinson, and Spencer grabbed for Robinson's gun.

By this time, Defendants Detective Erin O'Donnell and Detective Michael Demchak, the occupants of the second unmarked car, had also exited their vehicle and joined the confrontation. Together, the four police officers restrained Robinson: Barrow placed his forearm across Robinson's throat to cut off Robinson's air supply; Demchak seized Robinson's gun; and Spencer and O'Donnell handcuffed Robinson, who, at some point, lost consciousness. When Robinson regained consciousness, he was lying on the ground. He attempted to get to his feet and Spencer slammed him to the ground. Twice.

-2-

Case No. 1:11-CV-01609
Gwin, J.

Lieutenant Reynolds, Robinson's supervisor, and fellow corrections officer Gina Harris arrived on the scene in time to see Robinson, in handcuffs, forcibly placed into a Cleveland police cruiser.  Eventually, Robinson was transported to a hospital for medical treatment and to the Cuyahoga County Jail for intake.  In effect, the Defendants beat and arrested a state corrections officer for telling the Defendants not to approach a guarded opening in a state prison.

Suffering from physical and mental damages, Robinson now brings claims under 42 U.S.C. § 1983 for excessive force, unlawful seizure, false imprisonment, and municipal liability, and under Ohio state-law for willful, wanton, and reckless police conduct.  [Doc. 1-2.]  Defendants Barrow, Spencer, O'Donnell, and Demchack (the "individual Defendants") assert that they are entitled to qualified immunity and move for summary judgment.  [Doc. 30.]  Defendant City of Cleveland moves separately for summary judgment. [Doc. 29.]

## II.  Legal Standard

On a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) ("[T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.").  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

## III. Analysis

Case No. 1:11-CV-01609
Gwin, J.

*A. The Individual Defendants*

First, the individual Defendants (Barrow, Spencer, O'Donnell, and Demchak), assert a qualified immunity defense, and move for summary judgment on Robinson's § 1983 excessive force and unlawful arrest claims and on Robinson's Ohio state-law claims.  When evaluating a claim for qualified immunity, the Court asks two questions:  1) "whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right," and 2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citation and quotation marks omitted).  In this qualified immunity analysis, as with any motion for summary judgment, the Court takes the facts "in the light most favorable to the party asserting the injury," *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

1. Excessive Force

Robinson claims that the individual Defendants used excessive force, in violation of his Fourth Amendment right to be free from unreasonable seizure.  "The right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001).  The Court evaluates a claim of excessive force "during the course of seizure . . . under an objective reasonableness standard." *Morrison v. Bd of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (internal quotation marks omitted).  That evaluation "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted).  But the essential "question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397 (internal quotation marks omitted).

Case No. 1:11-CV-01609
Gwin, J.

The individual Defendants' motion is based on their version of the events, and ignores the well-established rule that this Court views the facts in the light most favorable to Robinson. The individual defendants ignore the substantially different factual circumstances presented by Robinson, including Robinson's and Corrections Officer Jones' testimony that the Defendants were the initial aggressors in the incident. According to Robinson and Jones, Barrow and Spencer jumped out of their vehicle and yelled obscenities as they advanced on Robinson. And, Robinson and Jones agree, Lt. Barrow was the first to draw his weapon, necessitating Robinson's defensive stance with his hand on *his* firearm. Moreover, Spencer testified that he was fully aware that Robinson was a fellow law-enforcement officer when he and Barrow pulled up at the NEPRC. Yet the police officers proceeded to advance on Robinson (and on the breached fence Robinson was assigned to secure) and now claim that their use of force on Robinson was reasonable.

What is undisputed in this case is that the individual Defendants exerted force on Robinson on several occasions: during the scuffle for Robinson's gun, handcuffing Robinson, and taking Robinson to the ground after he was handcuffed. The individual Defendants assert that the force they exerted on Robinson was reasonable because Robinson threatened them with deadly force. But on Robinson's version of the facts, supported by his and other corrections officers' testimony, the individual Defendants—the initial aggressors—had no justification for their use of force. Accordingly, summary judgment is inappropriate because there is "a factual dispute . . . involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant[s] did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988).

    2.  Unlawful Seizure and Arrest

-5-

Case No. 1:11-CV-01609
Gwin, J.

Robinson also makes § 1983 unlawful seizure and unlawful arrest claims.[1]  The Fourth Amendment requires "at least a reasonable suspicion that an individual has committed a crime before the individual may be seized." *Bletz v. Gribble*, 641 F.3d 743, 755 (6th Cir. 2011) (internal quotation marks omitted).  For an arrest, the Fourth Amendment requires probable cause—"a belie[f] that [the suspect] had committed (or was about to commit) a crime." *Zantello v. Shelby Twp.*, 277 F.App'x. 570, 572 (2008).  These are clearly established rights.  *See Humphrey v. Mabry*, 482 F.3d 840, 853-54 (6th Cir. 2007); *Jernigan v. City of Royal Oak*, 202 F.App'x. 892, 897 (6th Cir. 2006).

The individual Defendants' assertion of qualified immunity on these claims suffers from the same infirmary as above.  According to the individual Defendants, when they pulled up to the Correction's Center fence, they were not suspicious of Robinson.  [Doc 44 at 13.]  Thus, reasonable suspicion or probable cause—if any at all—developed over the course of the individual Defendants' contact with Robinson.  Accordingly, the lawfulness of Robinson's seizure and arrest turns on the disputed facts of that encounter.

"In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."  *Pyles v. Raisor*, 60 F.3d. 1211, 1215 (6th Cir. 1995).  As with the use of force, a rational trier of fact could find that the individual Defendants were the initial aggressors and acted unreasonably in seizing and arresting Robinson.  Accordingly, because Robinson also "present[s] significant probative evidence tending to support h[is] version of the facts, *evidence* on which a reasonable jury could return a verdict for h[im]," *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (emphasis in original), the individual defendants are not entitled to summary judgment.

---

[1]The Defendants do not dispute that Robinson was seized (or detained) and arrested.

Case No. 1:11-CV-01609
Gwin, J.

> 3. State Law Claims

In addition, the individual Defendants move for summary judgment on Robinson's Ohio state-law claims. The individual Defendants argue that, because their physical contact with Robinson was justified, they are entitled to immunity under Ohio law. Ohio Revised Code § 2744.03(A)(6) provides immunity to political subdivisions employees unless the employee acts "with malicious purpose, in bad faith, or in a wanton or reckless manner."

Again, the individual Defendants' overlook Robinson's version of the events; again, genuine issues of material fact preclude summary judgment. For the same reason that the individual Defendants are not entitled to qualified immunity, they are also not entitled to immunity under Ohio law. The evidence raises a genuine issue of material fact as to whether the individual Defendants acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Accordingly, summary judgment on Robinson's state-law claims is also denied.

## B. Defendant City of Cleveland

The City of Cleveland also moves for summary judgment on Robinson's claim that "based upon the actions and histories of Plaintiff's assailants on July 10, 2009, the City of Cleveland failed to adequately control, train, supervise, or discipline [the police officers]." [Doc. 43.] Robinson generally claims that the City failed to train its officers in interaction between plain-clothed police and uniformed officers of other law enforcement agencies. According to Robinson, the City is liable under § 1983 because that failure to train caused his constitutional injuries. The City says that Robinson has failed to set forth adequate factual allegations against the City and has failed to establish that the City caused constitutional violations. [Doc. 29-1.]

To succeed on a claim for relief under § 1983 against a municipality, a plaintiff must prove

Case No. 1:11-CV-01609
Gwin, J.

that his "constitutional rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir.2010) (internal quotation marks omitted).  To make a successful failure to train claim, the plaintiff must prove that:  "1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006).

Failure to train claims are not easy ones to establish—"[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, — U.S. —, 131 S.Ct. 1350, 1359 (2011).  The "stringent standard of fault," *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997), generally requires "[a] pattern of similar constitutional violations by untrained employees," *Connick*, 131 S.Ct. at 1360.  However, the Supreme Court did "le[ave] open the possibility that in a narrow range of circumstances, a pattern of similar violations might not be necessary," *Connick*, 131 S.Ct. at 1361, if the constitutional harm is a "patently obvious consequence of the deficiency in the training program." *Siler v. Webber*, 443 F.App'x. 50, 55 (6th Cir. 2011) (citing *Connick,* 131 S.Ct. at 1361).

Plaintiff Robinson does not allege a pattern of constitutional violations.  Accordingly, Robinson must prove that the City's supposed failure to train its plain-clothed officers to properly interact with other law enforcement officers falls within the "narrow range of circumstances" leading to municipal liability.  The Court, while recognizing that Robinson's burden is a significant one, cannot overlook the genuine issues of material fact that also preclude judgment for the City.

In its reply briefing, the City raises (for the first time) the existence of a February 2006

Case No. 1:11-CV-01609
Gwin, J.

Divisional Notice, "Off Duty and Plain Clothes Police Action." The City argues that the Divisional

Notice is "an appropriate policy regarding the proper conduct of its plain-clothed officers when

interacting with uniformed law enforcement personnel." [Doc. 45.] Apparently, only Detective

O'Donnell recalls instruction on plain-clothes interactions with uniformed officers; Lieutenant

Barrow supposedly couldn't think of any such instructions. Meanwhile, Robinson's expert report

opines that the individual officers violated "well established" plain-clothes law enforcement

procedures: intervening while in plain-clothes, not immediately identifying themselves, and, among

others, pointing a weapon toward uniformed law enforcement. [Doc. 44-5.]

The genuine issues of material fact also preclude a judgment on the failure-to-train claims.

The parties wholly disagree on the officers' actions; it is impossible to determine, therefore, whether

the officers did violate well-established plain-clothes law enforcement procedures. Moreover, given

the late appearance of the Divisional Notice, a genuine issue remains as to whether the individual

officers were instructed on that procedure, or if that Divisional Notice even covers the events of this

case. Accordingly, the Court denies the City's motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** both motions for summary judgment.

IT IS SO ORDERED.


Dated: March 13, 2012                     s/          *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE